**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF VIRGINIA**

FILED

2023 JAN -4 P 2: 17

1:23-CV-13-MSN-LRV

| | |
|---|---|
| ELOISE WOODS<br><br>          Plantiff,<br><br>v.<br><br>EQUITY RESIDENTIAL<br>EQUITY RESIDENTIAL MANAGEMENT LLC.<br>SAMUEL ZELL<br>MARK PARRELL<br>FRANCES NOLAN<br>NICOLE KLEIN<br><br>In the capacity as a trust for EQUITY RESIDENTIAL;<br><br>And doing business as<br>EQUITY RESIDENTIAL MANAGEMENT LLC;<br><br>          Defendants, | |

**DEFENDANTS;**

1. Defendant , Equity Residential, located at 2 North Riverside Plaza, Suite 400, Chicago, Illinois, operates as a real estate investment trust, engages in the acquisition, development, and management of rental apartment properties and owns the Arlington Courthouse Plaza Apartments in Arlington County, Virginia.

2. Defendant, Equity Residential Management, with its principal place of business, the aforementioned Equity Residential, in Chicago, Illinois, is a limited liability company and manages and leases multiple residential rental properties in Virginia, including the Arlington Courthouse Plaza Apartments' 396 rental units in Arlington County, Virginia.

3. Defendant, Samuel Zell, at all times relevant to this suit, serves individually as the Equity Residential Board of Directors Chairman and chairs Equity Group

Investments. Samuel Zell is herein sued as Chairman of Equity Residential Board of Directors and Equity Residential Real Estate Investment Trust.

4. Defendant, Mark Parrell, at all times pertinent to this action, serves individually as Equity Residential Chief Executive Officer and President and as an Equity Residential Board of Directors Trustee. He is herein sued as Chief Executive Officer and President of Equity Residential.

5. Defendant, Frances Nolan, at all times relevant to this suit and as described in her LinkedIn profile [***Exhibit A*** ]," serves individually as Equity Residential Management Vice President and herein sued as Vice President of Equity Residential Management.

6. Defendant, Nicole Klein, at all times pertinent to this civil action, serves individually as Equity Residential Management's Arlington Courthouse Plaza Apartments General Manager. She is herein sued as General Manager of Equity Residential Management's Arlington Courthouse Plaza Apartments in Arlington County, Virginia.

## 2. Plaintiff alleges:

**a)** This action is brought by plaintiff, Eloise Woods, on behalf of herself, to seek enforcement of and restitution pursuant to **42 USC § 1981 (a) and (c)** *Equal Rights Under The Law*;  **42 USC § 1982** *Property Rights of Citizens;*  **Virginia Fair Housing Law, Virginia Code § 36-96.3. (A) (2)** *Unlawful Discriminatory Housing Practices;*  **Arlington County Human Rights Ordinance, Arlington County, Virginia Code § 31-3 (A) (1) (b), (e), and (g)** *Prohibited Acts;*  **Virginia Code § 55.1-1258 (A) (ii) and (B)** *Retaliatory Conduct Prohibited*;  **Virginia Consumer Protection Act 59.1-200 (A) (13) and (14)** *Prohibited Practices;*  and, **Virginia Code § 55.1-1209 (A)** *Confidentiality Of Tenant Records.*

**b)**  This civil action addresses violations regarding Plaintiff's right to make and enforce contracts on an equal basis regardless of race or color, to lease property on an equal basis regardless of race or color, and to obtain nondiscriminatory terms and conditions of rental housing guaranteed, respectively, by **42 USC § 1981 (a) and (c)** *Equal Rights Under The Law*; **42 USC § 1982** *Property Rights of Citizens;*  **Virginia Fair Housing Law, Virginia Code § 36-96.3. (A) (2)** *Unlawful Discriminatory Housing Practices*, and, **Arlington County Human Rights Ordinance Virginia Code § 31-3 (A) (1) (b),** *Prohibited Acts.*

**c)** Plaintiff, in addition, brings this suit as Plaintiff was subjected to wholly private efforts intended to impede and obstruct Plaintiff's seeking and obtaining non judicial redress of contractual disputes pertaining to the force of binding obligations, activity protected under the above mentioned **42 USC § 1981 (a) and (c)** and **42 USC § 1982**; **Virginia Code § 55.1-1258 (A) (ii) and (B)** *Retaliatory Conduct Prohibited*; and, **Virginia Code § 31-3 (A) (1) (e), and (g)**, and said protected activity for which Plaintiff was also subjected to targeted adverse, retaliatory actions.

**d)** Plaintiff further requests legal redress as services previously afforded White Arlington Courthouse Plaza Apartments tenants were later denied to Plaintiff, in violation of **42 USC § 1982** .

**3.** This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

**4.** Venue in this district is proper pursuant to 28 U.S.C. § 1391(b). The events or omissions giving rise to this claim occurred in the Eastern District of Virginia; the property that is the subject of the action is situated in the Eastern District of Virginia; and, the Defendants conduct business in this District.

**5.** Defendant , Equity Residential, located at 2 North Riverside Plaza, Suite 400, Chicago, Illinois, operates as a real estate investment trust, engages in the acquisition, development, and management of rental apartment properties and owns the Arlington Courthouse Plaza Apartments in Arlington County, Virginia.

**6.**Defendant, Equity Residential Management, with its principal place of business, the aforementioned Equity Residential, in Chicago, Illinois, is a limited liability company and manages and leases multiple residential rental properties in Virginia, including the Arlington Courthouse Plaza Apartments' 396 rental units in Arlington County, Virginia.

**7.** Defendant, Frances Nolan, at all times relevant to this suit and as described in her LinkedIn profile [***Exhibit A*** ], is "responsible for the leadership of the DC Metro property management group", and serves as Equity Residential Management Vice

President. She is White and herein sued as Vice President of Equity Residential Management.

**8.** Defendant, Mark Parrell, at all times pertinent to this action, serves as Equity Residential Chief Executive Officer and President and as an Equity Residential Board of Directors Trustee. He too is White and herein sued as Chief Executive Officer and President of Equity Residential.

**9.** Defendant, Samuel Zell, at all times relevant to this suit, serves as the Equity Residential Board of Directors Chairman and chairs Equity Group Investments, a private investment firm he founded more than 50 years ago, and Equity Residential Real Estate Investment Trust. Samuel Zell is White and herein sued as Chairman of Equity Residential Board of Directors and Equity Residential Real Estate Investment Trust.

**10.** Defendant, Nicole Klein, at all times pertinent to this civil action, serves as Equity Residential Management's Arlington Courthouse Plaza Apartments General Manager and did so, in accordance with *Exhibit C*, until her last day of employment, March 30, 2022. She is White and herein sued as General Manager of Equity Residential Management's Arlington Courthouse Plaza Apartments in Arlington County, Virginia.

**11.** Defendants' residential rental properties in Arlington County, Virginia, including Arlington Courthouse Plaza Apartments, are dwellings within the meaning of the Virginia Fair Housing Law, Code of Virginia § 55.1-1200. At the Defendants' Arlington Courthouse Plaza Apartments dwelling, Black tenants comprise roughly 1.5 % - 1.8 % of the total number of tenants and White tenants comprise approximately 98.2 % - 98.5 % [*Exhibit B pages 1 - 2*].

**12.** Defendants, Nicole Klein, Frances Nolan, Mark Parrell and Samuel Zell, and their agents and/or employees have engaged in a pattern or practice of obstruction, harassment, retaliation and discrimination on the basis of race and color in connection with the rental of dwelling, Arlington Courthouse Plaza Apartments, owned by Equity Residential and managed and leased by Equity Residential Management, and did so in violation of **42 USC § 1981**; **42 U.S. Code § 1982;** Virginia Fair Housing Law, **Virginia Code § 36-96.3. (A) (2);** Arlington

County Human Rights Ordinance **Virginia Code § 31-3 (A) (1) (b), (e), and (g)**;; and, **Virginia Code § 55.1-1258 (A) (ii) and (B)**.

**13.** The Defendants and their agents have engaged in a pattern or practice of interference with and obstruction of Plaintiff's right to enforce, through non judicial processes, legally binding contractual obligations, and obstructed, harassed, retaliated and discriminated against Plaintiff vis-à-vis said protected activity.

**14.** Defendants, Nicole Klein, Frances Nolan, Mark Parrell, Samuel Zell, Equity Residential, and Equity Residential Management LLC have, at all times relevant to this Complaint, had the authority to control and direct the agents who committed acts of obstruction, harassment, retaliation and discriminator stated herein

ch the Premises is located, and the Community as a whole, are smoke-free living environments." and  "we [Defendants] will take reasonable steps to enforce the smoke-free terms of the Lease and to make the Community a smoke-free environment.", Defendants failed to do so.

**I. FACTUAL ALLEGATIONS**

**15.** The breadth of material here is considerable, necessitating a brief explanation to the Court. This complaint presents verified allegations regarding numerous acts of misconduct including, but not limited to, fraudulent, false, and misleading representations, statements and actions by Defendants, Frances Nolan and Nicole Klein, and other Defendants and Defendants' agents.

**16.** In an effort to familiarize the Court with the pertinent incidents and conduct related to the "Smoke Free Lease Addendum" terms, Plaintiff provides the following details:

**a)**  Plaintiff's initial tenancy in November 1993 until December 4, 2021 entailed a lease agreement and the most recent agreement was a one year lease from December 5, 2020 - December 4, 2021 *[Exhibit D  Residential Lease - Term Sheet pages 1 - 2]. Defendants'* Arlington Courthouse Plaza Apartments' leasing policy dictates, should tenants choose not to sign a new lease their tenancy becomes a month to month tenancy. Plaintiff since December 5, 2021 resides at the Arlington Courthouse Plaza Apartments as a month to month tenant.

**b)** The "Smoke - Free Lease Addendum", is an integral part of leasing agreement and reads, in relevant part:

"This Smoke Free Lease Addendum ("Addendum") is dated and effective as of the date on the Residential Lease - Term Sheet (the "Term Sheet") to which this Addendum is attached and made a part of ("the Lease") and is made by and between Lessor and Resident for the Premises at the Community identified in the Lease.

You acknowledge that the building in which the Premises is located, and the Community as a whole, are smoke-free living environments. You and all of your occupants and guests are prohibited from smoking anywhere in the interior or exterior of the Premises (including balconies and patios), within twenty-five feet of any building entrance, outdoor air intake and/or operable window, or anywhere else in the Community. This policy is intended to benefit all residents of the Community. You are responsible for any violation of this non-smoking policy by you, or any of your occupants or guests.

You understand that we will take reasonable steps to enforce the smoke-free terms of the Lease and to make the Community a smoke-free environment...."

**17.** While the aforementioned terms include, "....that the building in which the Premises is located, and the Community as a whole, are smoke-free living environments." and "we [Defendants] will take reasonable steps to enforce the smoke-free terms of the Lease and to make the Community a smoke-free environment.", Defendants failed to do so.

**18.** In fact, Defendants neither provided a smoke free environment at the premises from May 2020 - July 2021 nor on numerous occasions did the Defendants take reasonable measures to enforce the smoke free policy.

**19.** Plaintiff elaborated upon Defendants' failure to honor the above mentioned binding terms in a November 8, 2021 6:37 p.m. EST email communication [***Exhibit F pages 10 - 14***] to Defendant, Samuel Zell. The relevant portions of Plaintiff's November 8, 2021 email to Samuel Zell read:

"Additionally, I [Plaintiff] feel that I would be remiss not to comment regarding Frances Nolan's contention in her September 3, 2021 correspondence [***Exhibit E***] concerning the May 2020 - June 2021 marijuana smoking issue involving the former resident in apartment 1726, which read, "*.....we have continued to follow up and address every complaint you have brought forward to the best of our ability....Our role is to address issues of non compliance when found and work to ensure compliance as*

*best we can. In this situation we met that obligation. We continued to address your complaints each and every time."*

Frances Nolan's above statement is an unequivocal untruth. My [Plaintiff's] initial outreach concerning the above matters, as set forth in the attached files, *"Oct 21st 2020 E. Woods' Email To M. Parrell And M. Manelis Requesting More Aggressive Action"* [**Exhibit G**]; *"Nov 2nd 2020 E. Woods' Email To M. Parrell And M. Manelis Requesting More Aggressive Action"* [**Exhibit H**]; and, *"Nov 2020 - June 2021 E. Woods' Complaints To Equity Regarding Marijuana Smoke"* [**Exhibit I**], occurred in May 2020 and entailed phone calls to the concierge desk and leasing office. At no time during the aforementioned period did General Manager Nicole Klein or any staff member respond to my complaints nor confirm anyone was investigating them. Rather, as the smoking continued post my May 2020 - August 2020 calls to the concierge desk and leasing office, still with no response or follow up from Nicole Klein or any member of the staff indicating the matter was being addressed, I then sent a September 15, 2020 5:33 p.m. EDT written request via email [**Exhibits G page 2 and H pages 2 - 3**] for assistance and it read, in relevant part::

"Dear Ms. Rivera and Ms. Kline,

In the last two - three months I have called at least 5 - 6 times about residents in my vicinity, apartment 16_ _, smoking. Today, I smelled not only cigarette smoke but marijuana and in the majority of instances it has been marijuana. Both substances give me terrible headaches. I have asked several times when I have called about these occurrences that an email be sent at a minimum to residents on the 15th - 17th floors regarding this conduct yet at no time in the last three months have I received or seen such an email correspondence. The fact of the matter is that not only are residents violating their lease by smoking they are also violating the law in certain instances. To my knowledge smoking marijuana remains illegal in Virginia yet it consistently continues to occur here and it is highly disturbing. Will you please take more effective measures to address the above matters?"

As the foregoing facts demonstrate approximately four months passed before I [Plaintiff] received a response to my [Plaintiff's] complaints or any measures were implemented to resolve the unlawful conduct, smoking marijuana, occurring on the premises. In fact, the response and action that did finally occur did so post my aforementioned September 15, 2021 correspondence to Nicole Klein and Lizzie Rivera wherein I requested such [**Exhibits G page 2 and H pages 2 - 3**] Is ignoring a resident's complaints for four months and only taking action after the resident demands such your organization's standards to which Francis Nolan referred vis-à-vis "work to ensure compliance as best we can" or "to the best of our ability" or "address your complaints each and every time"?"

**20.** Plaintiff shared further details in the previously mentioned November 8, 2021 6:37 p.m. EST email communication to Defendant, Samuel Zell, regarding Defendants' failure to honor the "Smoke Free Lease Addendum" terms, and those details read:

"The above described occurrences are not the only ones in which my [Plaintiff's] requests for assistance concerning the marijuana smoking were ignored. As to this, while Nicole Klein and her team responded to my September 15, 2020 communication, it became readily apparent the measures upon which she embarked, emailing and calling residents in my vicinity, to rectify the situation were not a sufficient deterrent. As such by the sixth month of the smoking fiasco I, per the attached October 21, 2020 9:37 a.m. EDT email to CEO Mark Parrel and COO Michael Manelis entitled, "*URGENT! NEED HELP Marijuana Smoking Issue At Courthouses Plaza Arlington VA*" [***Exhibit G pages 1 - 2***], sought more aggressive action by Equity Residential. That October 21, 2020 communication read:

"Dear Mr. Parrell and Mr. Manelis,

I am in Arlington, VA Equity resident at the Courthouse, Plaza Apartments, and have resided here since November 1993. Currently, there is an ongoing issue of a resident in my vicinity of the building smoking marijuana on a regular basis. In fact, it has been occurring for several months. This circumstance is wreaking havoc on my health. I awaken in the middle of the night or early mornings with my apartment smelling of marijuana and headaches and chest pains from inhaling the fumes.

The Equity Regional Manager, Lizzie Rivera, and the Courthouse Plaza Apartments Manager, Nicole Klein, have made efforts to resolve the above issue, including emails and phone calls to residents in my vicinity. Regrettably, their actions have had either temporary or no impact upon whomever is violating the terms of his or her lease and Virginia law.

Will you kindly lend a hand in addressing this matter? I believe a letter from your General Counsel on Equity Letterhead to resident(s) addressing the described matter may be particularly helpful.

Nicole Klein's attached September 15, 2020 targeted email to residents in my vicinity helped to some extent in that the resident(s) is/are no longer smoking during the day. Hence, an email from your Equity General Counsel citing the legal violations and ramifications of such misconduct may cause the resident(s) to cease this conduct and eliminate the issue entirely."

Enclosed with my October 21, 2020 email to CEO Mark Parrell and COO Michael Manelis were my September 15, 2020 - October 20, 2020 communications with Lizzie Rivera, Nicole Klein and the leasing team [*Exhibit G*]. I included those to ensure Mr. Parrell, Mr. Manelis and General Counsel Scott Fenster were familiar with the measures taken should they be amenable to implementing a different and more aggressive approach than available to Nicole Klein. I received no response from Mark Parrell nor Michael Manelis or any member of their team and the marijuana smoking continued while contemporaneously wreaking havoc on my health. Is ignoring a resident's urgent request for help also your organization's standard of, "work to ensure compliance as best we can" or "address your complaints each and every time"? In fact, two weeks passed with still no response from eIther Mark Parrelll or Michael Manelis or any member of their team so I again on November 2, 2020 at 1:03 p.m. EDT as described in the attached file, "*Nov 2nd 2020 E. Woods' Email To M. Parrell And M. Manelis Requesting More Aggressive Action*" [*Exhibit H*], sought assistance beyond the measures at General Manager Nicole Klein's disposal. There too in the November 2, 2020 communication I attached my previous communications with Nicole Klein dating back to September 15, 2020 and up to November 2, 2020 [*Exhibit H*] and again did so to ensure Mr. Parrell, Mr. Manelis and General Counsel Scott Fenster were familiar with the measures taken thus far which were not a sufficient deterrent. In my November 2, 2020 communication I shared the following:

"Dear Mr. Parrell and Mr. Manelis,

Does the Equity General Counsel, Scott Fenster, intend to take any action or did he? The non-legal actions Nicole Kline and Lizzie Rivera have embarked upon are not resolving the matter. Regrettably, whoever is engaging in this misconduct ceases and desists for a brief period following Nicole Klein and Lizzie Rivera's requests resident(s) do so and then resumes shortly thereafter.  Would you kindly ask Equity General Counsel, Scott Fenster, to assist?"

I again received no follow up from Mr. Parrell, Mr. Manelis nor General Counsel Scott Fenster or any assurances more aggressive action would be taken or even considered, despite their knowing the current measures were not eradicating the problem. Is their inaction ,while having full knowledge current measures were an insufficient deterrent, indicative of your company's standard procedure, "to ensure compliance as best we can" or "to the best of our [your] ability"? As you're an obviously accomplished and hard working man, I would venture to guess their aforementioned action or rather inaction does not dovetail with your expectations, "to ensure compliance as best we [you] can" or "to the best of our [your] ability" nor

I would venture for, "Creating communities where people thrive.", your professed mission."

**21.**  By December 2020, as set forth in the file, "*Nov 2020  - June 2021 E. Woods' Complaints To Equity Regarding Marijuana Smoke*"[***Exhibit I pages 4 - 5***], it became readily apparent that the resident in 1726 was the tenant smoking marijuana and of which Defendant, Nicole Klein, was informed on numerous occasions.

**22.**  In fact, shortly before Christmas 2020 Plaintiff smelled marijuana one evening coming through Plaintiff's bathroom ceiling fan and immediately contacted the concierge representative, Darrell. He and Plaintiff then proceeded to the 17th floor whereupon Darrell told the 1726 tenant about smoke coming through Plaintiff's bathroom ceiling fan. After Darrell did so and Plaintiff returned to her apartment within minutes the marijuana smoke ceased emanating from Plaintiff's bathroom ceiling fan. This December incident was one among many, as described in the previously mentioned file, "*Nov 2020  - June 2021 E. Woods' Complaints To Equity Regarding Marijuana Smoke*" [***Exhibit I***], which pointed to the 1726 resident as the source of the problem. As set forth in the attached January 20, 2021 6:27 p.m. EST email to Nicole Kline [***Exhibit I page 3***], Plaintiff shared such was the case on January 19, 2021.

**23.** As indicated in Plaintiff's attached February 3, 2021 10:25 a.m. EST email communication [***Exhibit I page 4***], as of February 3, 2021 Defendants' Regional Manager Lizzie Rivera and Defendant, Frances Nolan, knew circumstances arose that consistently pointed to the 1726 resident essentially being the culprit. Plaintiff specifically indicated to them as well as Nicole Klein:

"The resident in 1726 is continuing to smoke marijuana during the early morning / dawn hours. Again this morning I awakened to marijuana smoke coming from my bathroom ceiling fan area....As I shared on 1/20/21, there is no question it is the resident in 1726 smoking. After I called the front desk representative on Tuesday, 1/19/21, and informed her then the resident in 1726 was smoking she called me back later that evening and said she called the resident in 1726 and he said that he was cooking. Despite what he said, he wasn't merely cooking and more importantly he in effect acknowledged the smoke is coming from his apartment."

**24.** The following month again Plaintiff alerted Defendants' Regional Manager, Lizzie Rivera and Defendant, Frances Nolan, circumstances still pointed to the 1726

resident as the one smoking. Plaintiff stated in that March 14, 2021 6:28 p.m. EDT email [*Exhibit I pages 6 - 7*], "As I shared in my below enclosed email this afternoon to your concierge staff member....I awakened Sunday morning with a terrible headache caused by a horrific aroma emanating from my bathroom area, which had spread throughout my apartment."  Plaintiff sent approximately four more communications over the next three months that again recited circumstances as the 1726 resident as the one smoking.

**25.** Despite Plaintiff's reports from December 2020 - June 2021 concerning the 1726 resident's repeated misconduct, no action was taken to evict him until June 25, 2021. Defendant, Frances Nolan, alluded to this action in a June 25, 2021 4:23 p.m. EDT email wherein she remarked, "While I'm not at liberty to share private information about other residents, I am hopeful that this matter will come to a resolution on its own in the next couple of months."

**26.** By roughly late August 2021 the 1726 tenant no longer resided at Arlington Courthouse Plaza Apartments and since his departure **NOT ONCE** has Plaintiff smelled marijuana smoke in her apartment nor reported such to any staff member or manager yet for roughly nine months prior Plaintiff told Defendants of concrete incidents which pointed to the 1726 resident as the tenant violating the "Smoke - Free Lease Addendum" and Defendants took no action until another 8 - 9 months and Plaintiff suffered physical injury as a result of Defendants' failure to act sooner, and on August 15, 2021 landed in Privia Medical Group Urgent Care Center in Arlington County, Virginia [*Exhibit F page 6 and Exhibit V pages 7 - 9*].

**27.**  Plaintiff shared further details in the aforementioned November 8, 2021 6:37 p.m. EST email communication to Defendant, Samuel Zell, regarding smoking having been an ongoing issue throughout the 2020 fall to the 2021 summer. Those details include:

"Lastly, General Manager Nicole Klein in a November 4, 2020 communication indicated, "we would like to offer you [Plaintiff] the opportunity to transfer onsite without penalty. Though, we cannot guarantee  you won't experience similar issues in another apartment." Given there was "no guarantee" I wouldn't experience a similar issue in a different apartment and as described in the attached files, "*Oct 21st 2020 E. Woods' Email To M. Parrell And M. Manelis Requesting More Aggressive Action*"" and "*Nov 2nd 2020 E. Woods' Email To M. Parrell And M. Manelis Requesting More Aggressive Action*", just three weeks prior in an October 15, 2020 5:08 p.m. Arlington Courthouse Plaza Apartments email communication, "**Community**

Updates and Reminders" [*Exhibits G pages 8 - 10 and H pages 9 - 10*], to the Arlington Courthouse Plaza Apartments community at large, Nicole Klein and her staff reported, "We are still receiving concerns from residents who smell smoke in their homes.", I chose not to transfer. Smoking, based on the October 15, 2020 communication, obviously was an issue throughout the complex. Moreover, November 2020 was the height of the Coronavirus pandemic and shutdown and already more than 230,000 Americans had died, 3,677 of whom were Virginians [*Exhibit O pages 1 - 3*], so transferring to a different unit where another tenant resided along with close contact with professional movers were not safe nor feasible.

Nicole Klein further offered on November 4, 2020, "...we would be willing to allow you to terminate your lease by paying a reduced settlement amount equal to $2012." Mr. Zell, given vacating under the aforementioned circumstances would have been tantamount to a constructive eviction and caused me emotional and mental distress in light of the potential and unforeseen costs of moving and having to do so in the midst of the Coronavirus pandemic and shutdown, that offer under those circumstances simply was not an equitable one. Similar offers occurred on June 8, 2021 and to which I replied in a June 9, 2021 3:31 a.m.. email which read, per the file, "*Nov 2020  - June 2021 E. Woods' Complaints To Equity Regarding Marijuana Smoke*":[*Exhibit I pages 16 - 17*]:

"....you stated, "we are willing to offer you the opportunity to terminate your lease and vacate the apartment without penalty." Should I find that I need to vacate and in light of your not guaranteeing a similar situation will not occur in another apartment here, my having to do so would  be tantamount to a constructive eviction. Therefore, your above set forth offer under such a circumstance simply would not suffice, particularly given my longstanding residency of 28 years and the emotional and mental distress such a development would cause me."


**28.** Following Plaintiff's sending the discussed June 9, 2021 message Plaintiff never received an alternative offer from Defendant, Nicole Klein. In fact, communication with Nicole Klein at that particular juncture, June 8, 2021 - June 9, 2021, took a turn for the worse. From stating unequivocal untruths to altering language in previously emailed communications in an effort to discredit Plaintiff, Nicole Klein's unethical conduct knew no bounds nor did her superior's, Lizzie Rivera. [*Exhibits J, K and L*]


**29.**  As to the aforementioned turn for the worse vis-à-vis Defendant Nicole Klein's June 8, 2021 - June 9, 2021 unethical conduct, Defendant, Nicole Klein, in a June 8, 2021 5:58 p.m. EDT email [*Exhibit K page 1*], on which Defendant, Frances Nolan,

was included, claimed the Arlington Courthouse Plaza Apartments staff exercised reasonable measures in enforcing Defendants' smoke free policy.

**30.** However, just days prior, as described in the Plaintiff's June 9, 2021 3:31 a.m. EDT email [*Exhibit K pages 2 - 3*], the staff did not. The Plaintiff's June 9, 2021 email concerning the preceding matter, on which Defendant, Frances Nolan, was also included, read:

"Hi Nicole,

While I [Plaintiff] appreciate your 6/8/21 communication, I am troubled and disturbed. At the outset you stated, "**As you are aware.....We've.....walked the halls when you've reported it....**". That simply is not true. As I indicated in my Sunday, 5/30/21, 12:08 a.m. and Friday, 6/4/21, 7:49 p.m. emails [*Exhibit I pages 11- 12 and page 15*], on Friday, 5/28/21, at approximately 9:00 p.m.and per your direction earlier that same day, I telephoned the concierge representative on duty, Jalyn, and informed her extensive pungent fumes were emanating from my bathroom ceiling. I then requested, in accordance with your previous direction, she go and investigate  and she refused. She stated more than once when I asked her to do so, "My supervisor told me I can't  leave the front desk." **So for you to say at the outset, "We've ...walked the halls when you've reported  it...", is factually inaccurate and seemingly disingenuous.** The reality is had she done so, including  knocking on the door of apartment 1726, you and your team more than likely would have determined  the source given the odor was pervasive but as mentioned she refused to do so. Hence, your claiming  due diligence has been exercised, when in fact it has not and I alerted you to that not once but twice on  Sunday, 5/30/21, at 12:08 a.m. and Friday, 6/4/21, at 7:49 p.m., remains troubling and upsetting."

**31.**  Within just hours of the Plaintiff's emailing the above detailed June 9, 2021 3:31 a.m. EDT email to Defendants, Nicole Klein and Frances Nolan, Nicole Kline in her June 9, 2021 12:34 p.m. EDT response [*Exhibit K page 3*] spewed further untruths. The Plaintiff's June 9, 2021 7:03 p.m. EDT response [*Exhibit K pages 4 - 5*] to Defendants, Nicole Klein and Frances Nolan, addressed those untruths and read as follows:

"....While I appreciate your follow up, I am even more troubled and disturbed than I was after receiving your 6/8/21 email. The untruths and  seemingly disingenuous conduct is continuing. As to this you stated, "**Prior to your signing the renewal  agreement, we discussed that we couldn't guarantee that there**

**would not be any further issues ....**" That is an unequivocal untruth. At no time did I speak directly with any Equity team member when negotiating the initial terms of my December 2020 - December 2021 lease agreement nor thereafter. The only individual I negotiated with regarding the terms of my new lease and what those terms would include was Ms. Rivera "[Defendants' Regional Manager Lizzie Rivera] [**Exhibit M pages 1 - 4**],

**32** . Post Defendant Nicole Klein's previously set forth June 8, 2021 -June 9, 2021 improper conduct, Plaintiff's initial written request to file a complaint occurred on June 14, 2021 at 4:39 p.m. EDT and that June 14, 2021 email to Mark Parrell labeled "**URGENT! Requesting Assistance Re: Filing Complaint With Equity HR Department**" stated, in relevant part [**Exhibit J page 1**]:

"....I [Plaintiff] am a longstanding Equity resident at the Arlington Courthouse Plaza Apartments in Arlington, VA. In fact, I initially moved here in 1993 when Charles E. Smith owned this property.....recently I had a highly troubling and distressing experience....would you kindly lend a hand in assisting me in filing a formal complaint with your Human Resource Department? I am troubled by my above mentioned experience and would like to file a complaint as soon as possible."

## II. DEFENDANTS' AND THEIR AGENTS' AND EMPLOYEES' PATTERN OR PRACTICE OF OBSTRUCTION, RETALIATION, HARASSMENT AND DISCRIMINATION

**33.** Post Plaintiff's pursuing the previously set forth nonjudicial methods of addressing issues about the force of the binding "Smoke Free Lease Addendum" terms and Defendants' and their agents' failure to honor said obligations, Defendants engaged in a pattern or practice of obstruction, retaliation, harassment, and discrimination by, among other ways:

**A)  Creating, maintaining, and perpetuating an environment at the Arlington Courthouse Plaza Apartments, which Defendants own and manage in Arlington County, Virginia, that is hostile to Plaintiff.**

**i)** Defendant, Nicole Klein, in a June 8, 2021 5:58 p.m. EDT email [**Exhibit K page 1**], on which Defendant, Frances Nolan, was included, made false statements about Defendants' employees' exercising reasonable measures in enforcing the smoke free

policy and on June 9, 2021 in 12:34 p.m. EDT response [***Exhibit K page 3; Exhibit L page 3***; ***and, Exhibit I page 15***] made additional false statements about December 2020 leasing agreement negotiations with Plaintiff [***Exhibit L pages 5 - 6***] and altered language in previously sent email in an attempt to discredit Plaintiff [***Exhibit L pages 1 - 3***] post Plaintiff's pursuing nonjudicial methods of addressing issues concerning Defendants' binding "Smoke-Free Lease Addendum" obligations

**ii)** Defendants' Regional Manager Lizzie Rivera, was party with whom Plaintiff negotiated the aforementioned December 2020 leasing agreement [***Exhibit M pages 1 - 4***]; included on the above mentioned June 8, 2021 - June 9, 2021 emails; and, knew Nicole Klein's above described false statements were, in fact, untruths yet took no action to intervene or safeguard Plaintiff's rights and/or interests.

**iii)** Defendant, Frances Nolan, condoned on June 25, 2021 at 4:23 p.m. EDT [***Exhibit J pages 6 - 7***], despite receiving Plaintiff's June 16, 2021 4:31 p.m. EDT twenty-seven minute oral account [***Exhibit V pages 1 - 7***] and documentary evidence verifying said account [***Exhibit J pages 4 - 6***], Defendant Nicole Klein's June 8, 2021 5:58 p.m. EDT and June 9, 2021 12:34 p.m. EDT false statements, altering of previously sent emails to conceal Defendants' employees' refusal to investigate complaints about then tenant 1726's smoking marijuana [***Exhibit I page 15***] and Defendant Nicole Klein's untruths about involvement in December 2020 leasing agreement negotiations with Plaintiff when, in fact, Defendants' Regional Manager Lizzie Rivera handled negotiations and Nicole Klein only handled administrative matters regarding leasing agreement [***Exhibit M pages 3  - 4 and Exhibit N***].

**iv)** Defendants, Mark Parrell and Frances Nolan, ignored, respectively, Plaintiff's August 24, 2021 12:34 a.m. EDT written request [***Exhibit U pages 1 - 2***]; August 24, 2021 1:04 a.m. EDT oral request via voicemail [***Exhibit V pages 16 - 17***], and, August 26, 2021 2:04 p.m. EDT written request, "**FILING FORMAL COMPLAINT; Re: URGENT!! Need Assistance Re: Disturbing & Unprofessional Exchange With Equity Manager**" [***Exhibit U page 3***; ***Exhibit F pages 5 - 8; and, Exhibit T page 8***], to file a formal complaint with Equity Residential Human Resources Department against Defendants' Regional Manager Lizzie Rivera for August 23, 2021 hostile, combative conduct [***Exhibit V pages 7 - 16***], and Defendant Nicole Klein's above discussed June 8, 2021 - June 9, 2021 misconduct inextricably linked to Defendants' "Smoke Free Lease Addendum" obligations, neglect vis-à-vis those obligations and Plaintiff's efforts to pursue nonjudicial methods of addressing those "Smoke-Free Lease Addendum" obligations.

**v)** Defendant, Frances Nolan, made false statements in September 3, 2021 10:06 a.m. EDT email by contending, concerning the May 2020 - June 2021 marijuana smoking issue involving the former resident in apartment 1726,  "......we have continued to follow up and address every complaint you have brought forward to the best of our ability....Our role is to address issues of non compliance when found and work to ensure compliance as best we can. In this situation we met that obligation. We continued to address your complaints each and every time."[***Exhibit E***], when in fact Plaintiff's initial outreach regarding the above mentioned smoking issue occurred in May 2020 and entailed phone calls to the concierge desk and leasing office and at **NO TIME** for the next four and a half months, May 2020 - September 15, 2020, did Defendant, Nicole Klein, or any staff member respond to Plaintiff's complaints or confirm anyone was investigating them [***Exhibit G page 2 and Exhibit H page 3***].

**vi)** Defendant, Frances Nolan, roughly one week after Plaintiff's aforementioned August 24, 2021 12:34 a.m. EDT; August 24, 2021 1:04 a.m. EDT; and, August 26, 2021 2:04 p.m. EDT requests to file a formal complaint with Defendants' Human Resources Department and Plaintiff's efforts to pursue nonjudicial methods of addressing issues concerning Defendants' binding "Smoke-Free Lease Addendum" obligations, ceased on September 3, 2021 at 10:06 a.m. EDT the at least five year policy or practice, given Plaintiff's 25 years of business by 2017,  of Frances Nolan's or Defendants' Regional Manager Lizzie Rivera's negotiating directly with Plaintiff regarding lease renewal terms so as to ensure Plaintiff received best offer possible [***Exhibit F pages 3 - 5***]. Frances Nolan established the foregoing policy or practice as Defendant and General Manager of Arlington Courthouse Plaza Apartments, Nicole Klein, lacked such authority.[***Exhibit E*** and ***Exhibit F pages 7 - 8*** ].

**vii)** Defendants then approximately 30 days after Plaintiff's aforementioned August 24, 2021 12:34 a.m. EDT; August 24, 2021 1:04 a.m. EDT; and, August 26, 2021 2:04 p.m. EDT requests to file a formal complaint with Defendants' Human Resources Department and efforts to pursue nonjudicial methods of addressing issues concerning Defendants' binding "Smoke-Free Lease Addendum" obligations, increased Plaintiff's rent $264.00, a 15% increase on Plaintiff's then current December 5, 2020 - December 4, 2021 monthly rental rate [***Exhibit F page 8*** and ***Exhibit T page 8***].

**viii)** Defendant, Samuel Zell, ignored Plaintiff's November 8, 2021 6:37 p.m. EST sixteen page email entitled "*URGENT! EQUITY CORP LEADERS CONDONE & PARTICIPATE IN MISCONDUCT Against 28 Year Equity Tenant*" and complaint, detailing Defendants Mark Parrell, Frances Nolan and Nicole Klein's and other employees' and agents' retaliatory and discriminatory conduct against Plaintiff post Plaintiff's pursuing nonjudicial methods of addressing issues concerning Defendants' binding "Smoke-Free Lease Addendum" obligations [*Exhibit F*]; ignored Plaintiff's plea for help in remedying said misconduct [*Exhibit F page 16*]; and, took no action to assist in ceasing the aforementioned retaliatory and discriminatory conduct [*Exhibit T pages 8 - 9*].

**IX)** Defendant, Frances Nolan, permitted and condoned Defendants' Regional Manager Lizzie Rivera's and Defendant Nicole Klein's:

**(a)** making false representations and misleading statements on November 30, 2021 to the Arlington Virginia Police Department and thereby interjecting three police officers into civil matters where no valid basis existed for doing so [*Exhibit T page 9*] post Plaintiff's pursuing the above mentioned nonjudicial methods of addressing issues concerning Defendants' binding "Smoke-Free Lease Addendum" obligations.

**(b)** asserting the pretext of a "wellness check" despite Plaintiff's neighbors never reporting anything suspicious to warrant such a "wellness check" and Defendants' **24 HOUR CAMERAS AT ALL ENTRANCES** to the dwelling, including the garage, show Plaintiff exiting and entering the premises on **NUMEROUS OCCASIONS throughout November 2021 and just days prior to November 30th**; and,

**(c)** using the Arlington Virginia Police Department and its three officers as a means of intimidation post Plaintiff's asserting her right to withhold paying rent in accordance with *Code of Virginia § 55.1-1258 Retaliatory Conduct Prohibited, § B*, which states, "*If the landlord acts in violation of this section, the tenant....may assert such retaliation as a defense in any action or against him for possession*.

**B. Providing inferior treatment to Plaintiff in the terms, conditions, and/or privileges of a rental at Defendants' Arlington Courthouse Plaza Apartments in Arlington County, Virginia.**

**i)**  Defendants, Nicole Klein and Frances Nolan, on December 22, 2021 at 8:52 a.m. EST caused Plaintiff's private Virginia Rent Relief Program emails to be published,

absent Plaintiff's consent and post Plaintiff's efforts to pursue nonjudicial methods of addressing issues concerning Defendants' binding "Smoke-Free Lease Addendum" obligations, to Defendants' employees and third parties, respectively, whose job duties do not dovetail with leasing or billing affairs nor meet the third party exception for a third party to receive Plaintiff's private information without Plaintiff's consent [*Exhibit Q pages 3 - 7*].

**ii)**  Defendants, Nicole Klein and Frances Nolan, continued on numerous occasions and over a span of five months  [December 22, 2021 at 8:52 a.m. EST; January 4, 2022 at 3:00 p.m. EST; February 1, 2022 at 4:10 p.m. EST; March 31, 2022 at 8:55 a.m. EDT; and, April 28, 2022 at 4:45 p.m. EDT *Exhibit P pages 1 - 2* and *4 - 5; and, Exhibit Q pages 3 - 15*]  to cause Plaintiff's private Virginia Rent Relief Program emails and related information to be published to Defendants' aforementioned employees and third parties, respectively, whose job duties do not dovetail with leasing or billing affairs nor meet the third party exception for a third party to receive Plaintiff's private information without Plaintiff's consent.

**iii)**  Virginia Rent Relief Program emails, which Defendants caused to be published absent Plaintiff's consent and post Plaintiff's efforts to pursue nonjudicial methods of addressing issues concerning Defendants' binding "Smoke-Free Lease Addendum" obligations, included the "**Subject**" title, "**VA Rent Relief Program - Tenant Application Needed**", and the "**To:**" portion contained plaintiff's email address, "**eloiseswoods@....**", thereby broadcasting the email pertained to Plaintiff and Plaintiff's Virginia Rent Relief Program Application. That same email further stated, "**This email is to inform you [***Plaintiff***] that your landlord [***Defendants***] has filed a Landlord Application for VA Rent Relief Program (RRP) for your rent property at 2250 CLARENDON BLVD APT 16 _ _ ARLINGTON VA, 22201-3373 To approve this case, we also need you, as a tenant, to do your part by submitting a Tenant Application online....If you already filed your application, please disregard this email.**" [*Exhibit P pages 1 - 2* and *pages 4 - 5; and, Exhibit Q pages 3 - 15*] The preceding sentences ensured the above referenced employees and third parties' receiving said email(s) readily discerned Plaintiff was the individual to whom the directive applied and filed for Virginia Rent Relief Program.

**iv)** Plaintiff issued via email on December 22, 2021 at 7:23 p.m. EST; December 23, 2021 at 11:21 p.m. EST; April 1, 2022 at 6:33 p.m. EDT; and, April 14, 2022 at 9:12 p.m. EDT [**Exhibit Q pages 3 - 4; 5 - 7; 10 - 12; and, 14**] , and via telephone discussions on February 9, 2022 at 3:39 p.m. EST with Defendants' outside legal counsel and Shulman Rogers attorney, Thomas Gartner [**Exhibit V pages 18 - 19**] , and April 13, 2022 at 5:56 p.m. EDT with Defendants' Arlington Courthouse Plaza Apartments Senior Leasing Agent, Bradley Burke [**Exhibit V pages 19 - 21**] , requests Defendants cease and desist from causing Plaintiff's above mentioned private Virginia Rent Relief Program information to be published, and Defendants ignored all six of Plaintiff's previously set forth requests. [**Tyler Technologies NIC Division Agent, Jamie Maccaroni, who processed Virginia Rent Relief Program applications, confirmed Plaintiff's Virginia  Rent Relief Program Application and ANY and ALL information or material related to it are private and in no way available to public.** *Exhibit R pages 1 - 2*]


**v)** Defendant, Nicole Klein; Defendants' Regional Manager Lizzie Rivera; and, Defendant, Frances Nolan, initially refused and failed in February 2022 to appropriately credit payments to Plaintiff's account [**Exhibit T pages 9 - 10 and Exhibit W pages 1 - 2**].


**vi)** Defendants' agent, outside legal counsel, and Shulman Rogers attorney, Thomas Gartner, impeded Plaintiff's nonjudicial methods of resolving conflicts about the force of binding contractual obligations vis-à-vis , but not limited to, Leasing Agreement Term, "**Default Remedies**", in paragraph 27 [**Exhibit D page 5 of 6**] and Plaintiff's privacy rights [**Exhibit Q pages pages 3 - 7, and 14; Exhibit R pages 1 - 2;  and, Exhibit V page**s **18 - 19**] and effectively obstructed performance of the leasing contract and Plaintiff's enjoyment of all benefits, privileges, terms, and conditions of that contractual relationship as are enjoyed by White residents. [**Exhibit T pages 10 - 12 and Exhibit W pages 1 - 5 and 7 - 8** ]


**vii)** Defendant, Frances Nolan, billed Plaintiff's account on March 31, 2022, **$3,249.76 in an attorney's fee** absent Arlington Virginia General District Court Judge Romaine Frances O'Brien's awarding such damages and in the face of the thirty-one year old Virginia Supreme Court [precedent setting] case, **Mullins v. Richlands Nat'l Bank, 241 Va. 447, 449 (1991)**,...."**a fact finder is required to determine from the evidence what are reasonable fees under the facts and circumstances of the particular case.**" [**Exhibit T pages 3 - 4; 7; and,12**;

**viii)** Defendants' Regional Manager Lizzie Rivera, per Defendant Frances Nolan's supervision, issued Plaintiff on May 17, 2022 a "Fourteen (14) Day Notice To Pay Or Quit" when, in fact, Defendants knew as of May 1, 2022 Plaintiff was approved on April 28, 2022 for a $13,812.80 Virginia Rent Relief Program Payment for **ALL** April 2022 - July 2022 rental charges. [*Exhibit T pages 13 - 14*].

**IX)** Defendant, Frances Nolan, and Defendants's Regional ManagerLizzie Rivera, billed Plaintiff's account, just one day shy of Arlington Virginia General District Court Judge Romaine Frances O'Brien's May 16, 2022 expungement of Defendants' November 2, 2021 Unlawful Detainer Claim, **$706.25 in attorney's fees [May 17, 2021]** and seven days post Judge O'Brien's expungement **$671.00 in attorney's fees [May 23, 2022]** absent Judge O'Brien's awarding such damages and in the face of *Mullins v. Richlands Nat'l Bank, 241 Va. 447, 449 (1991)*. [*Exhibit T page 14 and 17 - 19*].

**X)** Defendants' agent, outside legal counsel, and Shulman Rogers Managing Shareholder, Samuel Spiritos, refused to address and responded dismissively vis-à-vis Plaintiff's May 26, 2022 7:41 p.m. EDT oral complaints regarding Thomas Gartner's impeding Plaintiff's nonjudicial methods of remedying conflicts involving leasing obligations, including but not limited to Leasing Agreement Term, "**Default Remedies**", in paragraph 27 [*Exhibit D page 5 of 6*], and Samuel Spiritos too obstructed performance of the leasing contract and Plaintiff's enjoyment of all benefits, privileges, terms, and conditions of that contractual relationship as are enjoyed by White residents. [*Exhibit W pages 7 - 8*].

**XI)** Defendants' agent, outside legal counsel and Shulman Rogers attorney, Kyle Koppenhaver, refused two times on December 5, 2022 to engage in communications with Plaintiff after Arlington Virginia General District Court Clerk's Office informed Plaintiff on November 30, 2022 at 3:38 p.m. EST that Shulman Rogers', as Defendants' agent, customary practice in cases like Case GV22004187-00 Unlawful Detainer is for: (1) a defendant [Eloise Woods] to contact the plaintiff's [Equity Residential Management's] attorney, Kyle Koppenhaver, with Arlington Virginia General District Court Judge Romaine Frances O'Brien's November 29, 2022 Court Decision having been rendered in Equity Residential Management's favor; and, (2) set up payment arrangements. Shulman Rogers' aforementioned customary practice, with which the  Arlington General District Court Clerk's Office's seemed readily familiar, in effect appeared to be basis for its recommending Eloise Woods do so.. Despite Shulman Rogers' foregoing customary practice on Equity Residential

Management's behalf, Kyle Koppenhavrer remained adamant in his refusal to correspond with Eloise Woods or lend any assistance. *[Exhibit V pages 23 - 36]*

**C.  Defendants and their agents' false and misleading statements fostered and facilitated retaliation and discrimination against Plaintiff.**

**i)** Defendants' agent, outside legal counsel and Shulman Rogers attorney, Thomas Gartner, made false statements and representations concerning the Virginia Rent Relief Program privacy policy, including but not limited to his contention, "....no private information about you [Plaintiff] was sent....", and ignored Plaintiff's requests Defendants and their employees and agents cease and desist from causing Plaintiff's private information to be published [*Exhibit Q pages pages 3 - 7*, **and 14;** *Exhibit R pages 1 - 2;  and, Exhibit V page*s *18 - 19*].

**ii)** Defendant, Nicole Klein, made false and misleading representations concerning the processing of Virginia Rent Relief Program Applications thereby fostering and facilitating retaliation and discrimination against Plaintiff [*Exhibit Q pages 3 - 6; Exhibit R pages 1 - 2;  and Exhibit V page 19*].

**iii)**  Defendants' agent, outside legal counsel, and Shulman Rogers attorney, Thomas Gartner, made false statements and representations concerning Leasing Agreement Term, "**Default Remedies**", in paragraph 27 [*Exhibit D page 5 of 6*], and said misrepresentations fostered and facilitated retaliation and discrimination against Plaintiff. [*Exhibit T pages 1 - 2; 12 - 13; and 14 - 15; and, Exhibit W pages 7 - 8*].

**34.**  At all relevant times Defendants, Nicole Klein, Frances Nolan, Mark Parrell and Samuel Zell, their agents and/or their employees committed the discriminatory acts and any and all other unlawful conduct contained in paragraph 33 as agents for Equity Residential Management, LLC and/or Equity Residential.

**35.**  The conduct of the Defendants as described in paragraph 33, constitutes:

(i)  Wholly private conduct making unavailable to or denying Plaintiff performance and modification of leasing contract and the enjoyment of all benefits, privileges, terms, and conditions of that contractual relationship as are enjoyed by White citizens / White tenants, in violation of 42 U.S.C. §§ 1981 (a), while the

aforementioned impairment of Plaintiff's said protected activity constitutes discrimination by a private entity, in violation of 42 U.S.C. §§ 1981 (c);

(ii)  Retaliatory, adverse acts instituted to interfere with Plaintiff's right to make and enforce binding contractual obligations through nonjudicial methods of remedying conflicts about the force of contractual obligations, in violation of 42 U.S.C. §§ 1981 (a) and (c) and 42 U.S.C. §§ 1982;

(iii)  An abandonment of services previously afforded Defendants' White tenants but later denied to Plaintiff, in violation of 42 U.S.C. §§ 1982;

(iv)  Discrimination in the terms, conditions, or privileges of Plaintiff's rental of dwelling, on the basis of race or color in violation of Code of Virginia §36-96.3 (A) (2); and, Code of Virginia  § 31-3 (A) (1) (b);

(v)  An increase in rent and decrease in services post Plaintiff's complaints to Defendants, in violation of Virginia Code § 55.1-1258 (A) (ii) and (B);

(vi)  Interfering with Plaintiff's rental of dwelling because of race or color, in violation of Code of Virginia § 31-3 (A) (1) (e);

(vii)  Attempting to collect liquidated damages against Plaintiff under a clause that is unenforceable per applicable laws of the Commonwealth of Virginia [***Mullins v. Richlands Nat'l Bank***, 241 Va. 447, 449 (1991)], in violation of Virginia Code § 59.1-200 (A) (13); using other deception, fraud, false pretense or misrepresentation with, but not limited to, said transactions, in violation of Virginia Code § 59.1-200 (A) (14); and, engaging in said economic reprisal following Plaintiff's complaint about unlawful housing practices, in violation of Virginia Code § 31-3 (A) (1) (g); and,

(viii)  Releasing information about the Plaintiff in the possession of Defendants to third party absent Plaintiff's consent, in violation of  § 55.1-1209 (A).

36.  The conduct of Defendants, as described herein, was intentional, willful, egregious and taken with a reckless disregard for the rights of the Plaintiff.

37.  The conduct of the Defendants described in Paragraph 33 constitutes:

(i)  A pattern or practice of resistance to the full enjoyment of rights secured, respectively, by 42 USC § 1981 <u>et. seq</u>. *Equal Rights Under The Law* and 42 USC § 1982 *Property Rights of Citizens* .

(ii)  A pattern or practice of resistance to the full enjoyment of rights secured, respectively, by the *Virginia Fair Housing Laws* § 36.96.3 (A) (2); § 55.1-1258 (A) (ii) and (B);  and, 55.1-1209 (A);

(iii)  A pattern or practice of resistance to the full enjoyment of rights secured by the *Virginia Consumer Protection Act* 59.1-200 (A) (13) and (14);

(iv)  A pattern or practice of resistance to the full enjoyment of rights secured by the *Arlington County Virginia Human Rights Ordinance* §31-3 <u>et. seq</u>.

(v)  A repeated, concerted, egregious denial of Plaintiff's rights granted by the above set forth statutes in paragraph 37 (i), (ii), (iii) and (iv), which raises issues of general public importance.

38.  The Plaintiff, having been subjected to Defendants' numerous obstructive, retaliatory and discriminatory housing practices, is an aggrieved persons as defined by *Virginia Fair Housing Law* § 36-96.1:1 (i) and has suffered actual injury and damages as a result of Defendants' conduct as described herein.

WHEREFORE, the Plaintiff prays that the Court enter an order that:

A. Declares that Defendants' policies and practices, as alleged herein, violate the following:

(i)  42 USC § 1981 (a) and (c). *Equal Rights Under The Law* and 42 USC § 1982 *Property Rights of Citizens;*

(ii) *Virginia Fair Housing Law* § 36.96.3 (A) (2); § 55.1-1258 (A) (ii) and (B);  and, 55.1-1209 (A);

(iii)  *Virginia Consumer Protection Act* 59.1-200 (A) (13) and (14); and,

(iv)  *Arlington County Virginia Human Rights Ordinance* § 31-3 (A) (1) (b), (e), and (g);

B. Enjoins the Defendants, their agents, employees, and successors, and all other persons in active concert or participation with them from:

(1) Discriminating on account of race or color against Plaintiff or any person in any aspect of the rental of a dwelling; and

(2) Interfering with Plaintiff or any person in the exercise or enjoyment of rights granted or protected by the statutes set forth in paragraph 37  i), (ii), (iii) and (iv).

C. Requires the Defendants to immediately take the following steps so as to ensure non-discriminatory practices at their Arlington  County rental properties. :

(1)  Implement a self-testing program over the next three years to monitor their employee's compliance with fair housing laws at their Arlington County properties. The testing would be conducted by an independent contractor that would report the results to the defendants and the presiding Eastern District of Virginia presiding judge, chief Jude and clerk of the court and their respective successors, and allow Defendants' investors and those investors' entire board of directors, upon proof of their role as investors to the clerk of the court, to receive the aforementioned results too should investors so desire.

(2) Obtain fair housing training through an independent contractor for their employees who participate in renting, showing or managing apartments at the Arlington County properties and for the next three years send confirmation of said training when completed to the Eastern District Court presiding judge, chief judge and clerk of the court and their respective successors.

D. Assesses a civil penalty against Defendants of no less than $100,000.00, given their reckless disregard for their duties as managers, executives and Equity Residential Board Members, respectively, and their recklessness disregard for Plaintiff's rights, wherein said penalty would be placed in a fund which the Virginia Department of Housing and Community Development would oversee and manage so as to reestablish a rent relief program similar to that of its previous Virginia Rent Relief Program;

E.  Awards the following monetary damages to Plaintiff, the person aggrieved by Defendants' repeated, egregious obstructive, retaliatory and discriminatory housing practices:

(1) Payment for any and all costs Plaintiff incurred or should occur to obtain redress and restitution, including but not limited to, court fees and attorneys' fees should Plaintiff seek such assistance.

(2) Given the gravity of the misconduct to which the Defendants subjected Plaintiff, and the intentional, concerted, repeated and reckless disregard Defendants' demonstrated concerning Plaintiff's rights, payment of $350,000.00 in punitive damages.

(3) Payment of compensatory damages of $30,000,000.00.

F.  Plaintiff further prays for such additional relief as the interests of justice may require.

Plaintiff hereby demands a trial by the court, absent a jury, of this action and of all issues.


Eloise S. Woods

2250 Clarendon Boulevard

Unit 1626

Arlington, VA 22201

Email: eswvirginia@gmail.com

Phone: (202)670-4503



City County of Arlington
Commonwealth of Virginia
The foregoing instrument was acknowledged before me
this 4th day of January , 2023
by Eloise S. woods
Draylen a. Smith Notary Public
Reg. # 7809548 Com. Exp. 05/31/2026

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRIGINIA
_____ DIVISION

FILED

_Eloise S. Woods_
_____
                  Plaintiff(s),

2023 JAN -4 P 2: 11

        v.

_Equity Residential, et. al_
_____
                  Defendant(s).

Civil Action Number: _____

## LOCAL RULE 83.1(M) CERTIFICATION

I declare under penalty of perjury that:

No attorney has prepared, or assisted in the preparation of _Complaint and Motions_
                                                            (Title of Document)

_Eloise Woods_                          _For Emergency TRO_
_____         _and Preliminary_
Name of *Pro Se* Party (Print or Type)   _Injunctive_
_Eloise S. Woods_                        _Relief_
_____
Signature of *Pro Se* Party

Executed on: _1/4/23_ (Date)

                        OR

The following attorney(s) prepared or assisted me in preparation of _____.
                                                                    (Title of Document)

_____
(Name of Attorney)

_____
(Address of Attorney)

_____
(Telephone Number of Attorney)
Prepared, or assisted in the preparation of, this document

_____
(Name of *Pro Se* Party (Print or Type)

_____
Signature of *Pro Se* Party

Executed on: _____ (Date)